ALYSSA MILMAN WHITE, ESQ. (SBN 160212)
alyssa@angelowhitelaw.com
SARA L. ESCALANTE, ESQ. (SBN 323127)
sara@angelowhitelaw.com
**ANGELO & WHITE**
A Professional Corporation
610 Newport Center Drive, Suite 1200
Newport Beach, CA 92660
Telephone:  (949) 640-0800
Facsimile:   (949) 640-0887

Attorneys for Plaintiff, R&R Surgical Institute

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| R&R SURGICAL INSTITUTE, an unincorporated association;<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL LONGSHORE & WAREHOUSE UNION; PACIFIC MARITIME ASSOCIATION, a California nonprofit corporation; ILWU-PMA WELFARE PLAN; BOBBY OLVERA JR.; FRANCISCO PONCE DE LEON, III; CAMERON WILLIAMS; MICHAEL H. WECHSLER; WILLIAM HIRAI; and ROBERT L. STEPHENS;<br><br>Defendants. | Case No. 2:21-cv-00640<br><br>**COMPLAINT FOR:**<br><br>1. **FALSE LIGHT;**<br>2. **CIVIL RICO VIOLATION (18 U.S.C. § 1961 et seq.);**<br>3. **SHERMAN ACT VIOLATION (15 U.S.C. § 1).**<br><br>**DEMAND FOR JURY TRIAL** |

1

**COMPLAINT**

Plaintiff R&R SURGICAL INSTITUTE alleges as follows:

## JURISDICTION

1. This Court has federal question jurisdiction because a substantial part of this action arises under the laws of the United States. (28 U.S.C. §§ 1331 and 1337.)

## PARTIES

2. At all times mentioned herein, Plaintiff R&R SURGICAL INSTITUTE, ("R&R" or "Plaintiff"), was and is an unincorporated association doing business in the state of California, county of Los Angeles, as an ambulatory surgery center.

3. Defendant, INTERNATIONAL LONGSHORE & WAREHOUSE UNION ("ILWU"), is a labor union which primarily represents dock workers on the West Coast of the United States and does business in the state of California, county of Los Angeles.

4. Defendant, PACIFIC MARITIME ASSOCIATION ("PMA"), is a California non-profit corporation representing maritime companies who do business on the West Coast of the United States.

5. Defendant, ILWU-PMA WELFARE PLAN ("ILWU-PMA" or "the Plan") operates under the direction of joint Trustees representing the International Longshore and Warehouse Union ("ILWU") and the Pacific Maritime Association ("PMA") to provide and administer healthcare benefits to active and retired longshore workers of the West Coast, as well as their dependents and survivors.

6. BOBBY OLVERA JR. is an individual residing in San Francisco, California, and is an ILWU Union Trustee.

7. FRANCISCO PONCE DE LEON, III is an individual residing in San Francisco, California, and is an ILWU Union Trustee.

8. CAMERON WILLIAMS is an individual residing in San Francisco, California, and is an ILWU Union Trustee. (The parties referred to in paragraphs 6-8 will hereinafter collectively be referred to as "the UNION TRUSTEES".)

9. MICHAEL H. WECHSLER is an individual residing in San Francisco, California, and is a PMA Employer Trustee.

10. WILLIAM HIRAI is an individual residing in Seattle, Washington, and is a PMA Employer Trustee.

11. ROBERT L. STEPHENS is an individual residing in Antioch, California, and is a PMA Employer Trustee. (The parties referred to in paragraphs 9-11 will hereinafter collectively be referred to as "the EMPLOYER TRUSTEES".)

## VENUE

12. Venue is proper in this judicial district under 28 U.S.C. §§ 1391 (b) and (c).

## GENERAL ALLEGATIONS

13. R&R is a state-of-the-art ambulatory surgery center recognized by the Accreditation Association for Ambulatory Health Care ("AAAHC"). The AAAHC certificate of accreditation is a sign that a health care organization meets or exceeds nationally recognized standards.

14. The ILWU-PMA Welfare Plan is an ERISA employee benefit plan established through a collective bargaining agreement between the International Longshore & Warehouse Union ("ILWU") and the Pacific Maritime Association ("PMA"). The Plan provides medical, surgical, and hospital benefits to Plan members through a self-funded indemnity program, the Coastwise Indemnity Plan, which covers in-network services through BlueShield of California's preferred provider ("PPO") network, as well as out-of-network services.

15. Plaintiff has been rendering out-of-network services to ILWU-PMA Welfare Plan members since 2018. Plaintiff provides excellent services, has the capacity to perform highly skilled and particularly complicated procedures, charges usual, customary, and reasonable ("UCR") rates, and timely submits claims for reimbursement.

16. As a result of Plaintiff performing such excellent services, its patients who are ILWU-PMA Plan members have returned to Plaintiff to perform additional care. Further, these same patients have referred multiple friends and family members to utilize Plaintiff's services.

17. The agreement establishing the ILWU-PMA Welfare Plan set up a trust fund administered by a six-person Board of Trustees; three from the ILWU and three from the PMA. The purpose of the joint trust fund is to collect employer and employee contributions, from which benefits are paid. The costs of physician services, hospital stays, surgery, etc., are paid either directly from the trust fund to cover out-of-network claims or a premium is paid to BlueShield of California, which in turn pays the doctor, hospital, etc., for in-network claims.

18. The Plan covers 100% of claims billed in-network and 80% of the UCR for out-of-network claims, after the member's deductible has been met.

19. For in-network services, claims are paid based on a fee structure negotiated with the in-network providers. The premiums guarantee claim payment, regardless of whether the total annual cost of claims incurred by Plan members is more or less than the fixed premium cost.

20. For out-of-network services, there is no fixed premium cost. The claims are paid from the trust fund as they are incurred by Plan members, and if the total annual cost of claims does not exceed the amount contributed by employers and employees, then the unused funds remain in the trust, collecting interest. This arrangement presents a financial incentive to deny, delay, or otherwise underpay out-of-network claims.

21. While Plaintiff is an out-of-network facility, it is also affiliated with a medical provider, Ramin M. Roohipour, M.D., Inc. ("R&R's Affiliate"), that has experience dealing with the Plan both in-network and out-of-network. Between May of 2015 and May of 2016, R&R's Affiliate contracted with the Plan as an in-network provider. During this time, the Plan promptly paid claims without issue.

COMPLAINT

22. From May 2016 to present, R&R's Affiliate went out-of-network and quickly became aware that Plan's repeated course of conduct to delay out-of-network claims processing and deny or grossly underpay pre-authorized claims was so systematic it was engaging in unlawful, unfair and deceptive business practices.

23. Accordingly, R&R's Affiliate received assignments from patients and filed a lawsuit against the Plan for wrongful denial of ERISA benefits. After protracted law and motion regarding the enforceability of the Plan's anti-assignment clause, the lawsuit was dismissed for lack of standing to bring a claim under ERISA's civil enforcement provision. Nevertheless, R&R's Affiliate continued to send written correspondence to the Plan, challenging its wrongful denial and/or delayed underpayment of out-of-network claims and failure to abide by ERISA-regulated claims procedures, as codified by 29 C.F.R. § 2560.503-1.

24. Once Plaintiff, R&R, began rendering services to ILWU-PMA Plan members in 2018, it immediately recognized the Plan's same pattern of delaying out-of-network claims processing.

25. As an out-of-network facility, Plaintiff has instituted procedures to verify patient benefits and obtain preauthorization for proposed surgeries, prior to rendering services. Specifically, Plaintiff routinely called ILWU-PMA before treating its Plan members to verify eligibility, determine the remaining deductible amount, and to confirm the rate at which the Plan pays out-of-network claims. Plaintiff contemporaneously memorialized the Plan's representations on an internal office form entitled "Insurance Verification" during the regular course of business.

26. Further, ILWU-PMA contracts with a third-party, Innovative Care Management ("ICM"), to provide voluntary utilization review services. ICM medical professionals provide an objective review of proposed treatments prior to surgery. Plaintiff routinely submitted preauthorization requests and certain clinical information to ICM before treating ILWU-PMA Plan members. If the proposed services were approved, ICM sent Plaintiff a letter stating: "An Innovative Care

Management registered nurse has reviewed and authorized your requested medical services under the terms of the Coastwise Indemnity Plan … This authorization serves as a directive to the Coastwise Claims Office to pay for the above approved services."

27. Plaintiff rendered services in reliance on the representations that services were approved and would be covered at a specific out-of-network rate. Despite these assurances, ILWU-PMA continued to deny preauthorized claims or failed to pay at the represented rate.

28. By September of 2019, Plaintiff had submitted 25 out-of-network claims for ILWU-PMA Plan member's with dates of service from January to June of 2019, without receiving any response or payment from the Plan.

29. Accordingly, Plaintiff retained the same attorney as R&R's Affiliate and on September 18, 2019, Plaintiff sent the Plan's counsel a demand letter addressing the 25 pending out-of-network claims.

30. The Plan and R&R's Affiliate had already litigated a case by this point, so the Plan was on notice that Plaintiff would likely file a lawsuit if proper reimbursement were not made in short order.

31. On September 27, 2019, the Plan sent Plaintiff a $121,996.42 check for four of the unpaid claims addressed in the demand letter.

32. During this same time, R&R's Affiliate brought another lawsuit against the Plan for breach of oral contract, quantum meruit, and promissory estoppel. This lawsuit was not derivative of any patient rights. Rather, it was based solely on the representations that were made to Plaintiff by ILWU-PMA in the regular course of doing business. Because this case was not derivative of any employee benefits, it was filed in state court. ILWU-PMA removed the case to Federal Court without any basis for doing so. On October 25, 2019, R&R's Affiliate filed a Motion to Remand said lawsuit back to State Court and ILWU-PMA filed a Motion to Dismiss.

33. On January 17, 2020, the Motion to Remand was heard before Judge André Birotte Jr. in the U.S. District Court in Los Angeles, Case No. 2:19-cv-08177-AB-E. During that hearing, the court issued a tentative ruling granting the Motion to Remand. The tentative decision, which became the Court's order, denied ILWU-PMA's Motion to Dismiss as moot and confirmed that Plaintiff's case was not derivative of any patient or member rights, thus, not preempted by ERISA.

34. On January 22, 2020, just five days after the court issued its tentative ruling, ILWU-PMA, the UNION TRUSTEES, and the EMPLOYER TRUSTEES sent both Plaintiff and R&R's Affiliate a retaliatory letter stating:

"You are hereby notified that the Trustees of the ILWU-PMA Welfare Plan ("Plan") who have sole authority to administer the Plan, have determined that effective February 21, 2020, the Plan will not reimburse or otherwise pay any claims for services, supplies, tests or prescriptions provided to Plan participants or beneficiaries by you.

"You are also notified that the Plan participants and beneficiaries have been informed that, consistent with the Plan's terms, they will not be reimbursed or indemnified by the Plan for any services, supplies, tests or prescriptions provided to them by you."

35. A copy of this correspondence was sent to every ILWU-PMA Plan member, many of whom had upcoming surgeries scheduled at R&R.

36. Additionally, Plaintiff's name was, and continues to be published on the ILWU-PMA Benefit Plan's online "terminated provider" list. There is no explanation provided as to why a provider or facility is placed on this list; it simply states: "This page contains a complete and current list of all providers and healthcare facilities whose services are no longer covered by the Plan." Absent explanation, the reasonable inference is that a provider is put on this termination list for cause, i.e., fraud, waste, or abuse committed by that provider. However, there have been no such allegations levied against Plaintiff.

37. Plaintiff is informed and believes and thereon alleges that ILWU, PMA, the Plan, and the UNION and EMPLOYER TRUSTEES (hereinafter collectively referred to as "Defendants") conspired to oust Plaintiff by putting the facility on its terminated provider list. This retaliatory decision was responsive to R&R's Affiliate successfully asserting state law liability against the Plan, outside the reach of ERISA's preemption provisions, and to Plaintiff continuing to hold the Plan accountable for delayed, denied, and underpaid out-of-network claims.

38. Moreover, the Plan concedes liability for Plaintiff's unpaid claims. By March of 2020, the Plan had paid Plaintiff $947,137.98 for claims addressed in the September 2019 demand letter, which had been pending for well over a year.

39. Plaintiff's counsel sent subsequent demand letters addressing unpaid claims on April 17, 2020 and July 31, 2020. To date, the Plan has paid Plaintiff an additional $486,017.06 for claims addressed in those demand letters.

40. In addition to demand letters regarding claims that had gone unpaid, Plaintiff's counsel also sent demand letters regarding the Plan's unlawful, unfair, and deceptive claims processing. For example, the Plan uses the erroneous denial code, "documentation missing elements to support services," as a tool to forestall the processing of claims.

41. Another example is the Plan uses the erroneous denial code, "Per CMS/ASC policy, this service is not allowed in an Ambulatory Surgical Center setting." However, as noted above, the Plan contracts with ICM to provide Voluntary Utilization Review Services. Plaintiff avails itself to ICM's services and relies on ICM's representation that a particular service is covered under the terms of the Plan, only to find out post-service that the Plan claims otherwise.

42. Defendants' refusal to continue dealing with Plaintiff demonstrates that if an out-of-network facility attempts to hold the Plan accountable for delayed claims processing and/or coverage misrepresentations and is also willing to expend

resources to fully redress those wrongs of the law, Defendants' solution is to oust that out-of-network provider from the marketplace.

43. Defendants stand to benefit from these unfair and anti-competitive business practices because by delaying, denying, or underpaying out-of-network claims, the unused employer and employee contributions earmarked for out-of-network services remain in the Plan's trust fund.

44. By eliminating out-of-network providers who demand timely payment based on represented rates, Defendants unreasonably restrain competition between out-of-network providers and effectively fix the price of out-of-network services to below value, which in turn suppresses the reported UCR rates for out-of-network services in the relevant geographic region.

45. Plaintiff is informed and believes and thereon alleges that there are endemic and systematic problems with ILWU-PMA's processing and payment of out-of-network claims that go far beyond its treatment of Plaintiff. However, due to Plaintiff's actions in holding the Plan accountable for unexcused delays and misrepresentations regarding out-of-network coverage, ILWU, PMA, the Plan and its UNION and EMPLOYER TRUSTEES have taken the tortious actions against Plaintiff as alleged herein.

## FIRST CAUSE OF ACTION
## (FALSE LIGHT)
## (As to All Defendants)

46. Plaintiff repeats and re-alleges and incorporates herein by reference each and every allegation contained in all prior paragraphs as though fully set forth at length herein.

47. Defendants publicly disclosed information that showed Plaintiff in a false light. Specifically, by issuing the termination letter to all Plan members and placing Plaintiff on the online terminated provider list without any context or explanation,

1 the reasonable implication is that Plaintiff was terminated for cause, i.e., for fraud, waste, or abuse.

48. The false light created by the disclosure would be highly offensive to a reasonable out-of-network provider in Plaintiff's position.

49. There is clear and convincing evidence that Defendants knew the disclosure would create a false impression about Plaintiff or acted with reckless disregard for the truth.

50. Plaintiff sustained harm to his business and professional reputation, including money spent and/or lost because of the disclosure.

51. Defendant's conduct was a substantial factor in causing Plaintiff's harm.

52. Defendants maliciously published information placing Plaintiff in a false light in retaliation to Plaintiff demanding timely payment for preauthorized out-of-network services at the represented rate. Because the acts taken toward Plaintiff were carried out by Defendants with malice, fraud, and oppression, Plaintiff is entitled to punitive damages pursuant to California Code of Civil Procedure section 3294.

## SECOND CAUSE OF ACTION
## (CIVIL RICO VIOLATION – 18 U.S.C. § 1961 et seq.)
**(As to All Defendants)**

53. Plaintiff repeats and re-alleges and incorporates herein by reference each and every allegation contained in all prior paragraphs as though fully set forth at length herein.

54. Each Defendant violated 18 U.S.C. § 1962(c) by the acts described in the prior paragraphs, and as further described below.

55. A RICO enterprise is defined as "any individual, partnership, corporation, association, or other legal entity and any union or group of individuals associated in fact through not a legal entity." (18 U.S.C. § 1961(4).)

56. Defendant ILWU-PMA Welfare Plan constitutes an enterprise within the meaning of section 1961(4) that functions as a continuing unit with an ascertainable

structure separate and distinct from that of the conduct of the pattern of racketeering activity in which it engages. There may also be other members of the enterprise, such as directors and officers, who are unknown at this time.

57. Alternatively, and/or additionally, Defendants ILWU and PMA each constitute a separate enterprise within the meaning of section 1961(4).

58. Each enterprise has engaged in, and their activities have affected, interstate commerce.

59. The Defendant UNION TRUSTEES, and Defendant EMPLOYER TRUSTEES are associated with the enterprise and participated in the conduct of the affairs of the enterprise because they have discretionary authority and responsibility over the Plan's administration.

60. The Defendants agreed to and did conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity and for the purpose of delaying, denying, and underpaying out-of-network welfare benefit claims.

61. Pursuant to and in the furtherance of their unlawful scheme, Defendants committed numerous related acts of mail fraud (as defined in 18 U.S.C. § 1341), wire fraud (as defined in 18 U.S.C. § 1343), and embezzlement from welfare funds (as defined in 18 U.S.C. § 664), as set forth above. Those acts constitute a pattern of racketeering activity pursuant to 18 U.S.C. section 1961(5).

62. Defendants have directly and indirectly conducted and participated in the conduct of the affairs of the enterprise through the pattern of racketeering activity described above, in violation of 18 U.S.C. section 1962(c).

63. As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. section 1962(c), Plaintiff has been injured in its business and property in that it was denied payment at the represented rate and then ousted when it attempted to hold Defendants accountable for their misrepresentations and legal obligations.

**COMPLAINT**

64. As a result of the foregoing, Defendants are liable to Plaintiff for treble damages in amount to be proven at trial, the cost of suit, and reasonable attorney's fees pursuant to 18 U.S.C. section 1964(c).

## THIRD CAUSE OF ACTION
## (SHERMAN ACT VIOLATION – 15 U.S.C. § 1)
### (As to all Defendants)

65. Plaintiff repeats and re-alleges and incorporates herein by reference each allegation contained in all prior paragraphs as though fully set forth at length herein.

66. Defendants ILWU, PMA, the Plan, the UNION TRUSTEES, and the EMPLOYER TRUSTEES entered a combination, trust and conspiracy to restrain out-of-network competition by unreasonably refusing to deal with out-of-network providers that demand timely payment at the represented UCR rate.

67. Defendants did so by operating in a manner calculated to effectively limit, if not eliminate, the obligation to pay promised benefits for out-of-network claims. This conduct includes but is not limited to: inducing out-of-network providers such as Plaintiff to render services by misrepresenting out-of-network benefit coverage rates; pre-authorizing proposed services, but then denying coverage after Plaintiff performed the services; failing to timely respond to submitted claims; and further delaying claims processing by making repeated requests for already provided medical records or using erroneous denial codes.

68. When Plaintiff, by and through its counsel, put Defendants on notice of the aforementioned conduct, Defendants further engaged in anti-competitive practices by universally severing Plaintiff's relationship with Plan members in an attempt to stifle any competition Plaintiff may have presented by legally enforcing its rights against Defendants.

69. Defendants challenged activity has a substantial effect and creates unreasonable restraints on interstate trade and commerce.

**COMPLAINT**

70. As a direct and proximate result of Defendants' violations of the Sherman Act (15 U.S.C. § 1), Plaintiff was injured in its business and property and was deprived of competition between out-of-network surgeons providing services to ILWU-PMA Plan members.

71. Plaintiff is entitled to recover three times the damages it sustained, in an amount to be determined according to proof at trial, plus interest, the cost of suit, and reasonable attorney's fees pursuant to 15 U.S.C. § 15.

## DEMAND FOR JURY TRIAL

72. Plaintiff hereby demands trial by jury of this action.

## PRAYER

**Plaintiff prays for judgment against all Defendants on the First Cause of Action as follows:**

1. For general, compensatory, and consequential damages in an amount to be determined according to proof at the time of trial;

2. For interest at the highest legal rate commencing from the earliest date allowed by law;

3. For punitive and exemplary damages in an amount sufficient to punish each defendant named in the First Causes of Action, according to proof;

4. For costs of suit incurred herein; and

5. For such other and further relief as the Court may deem just and proper.

**Plaintiff prays for judgment against all Defendants on the Second and Third Causes of Action as follows:**

6. For treble the amount of actual damage to Plaintiff for the Second and Third causes of action;

7. For Plaintiffs' reasonable attorney's fees and costs of suit incurred herein;

///

///

///

8. For interest at the highest legal rate commencing from the earliest date allowed by law;

9. For such other and further relief as the Court may deem just and proper.

Dated: January 21, 2021                  **ANGELO & WHITE**

By: /s/Alyssa Milman White
ALYSSA MILMAN WHITE, ESQ.
Attorneys for Plaintiff, R&R Surgical Institute